UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| WALTER L. TAMOSAITIS, PHD, *et al.*,<br><br>Plaintiffs,<br><br>v.<br><br>BECHTEL NATIONAL, INC., *et al.*,<br><br>Defendants. | NO. CV-10-5116-RHW<br><br>**ORDER GRANTING PLAINTIFFS' MOTION TO REMAND** |

Before the Court are Defendants' Motions to Dismiss (Ct. Recs. 13, 17, and 21), Plaintiffs' Motion to Strike (Ct. Rec. 32) and Plaintiffs' Motion to Remand (Ct. Rec. 33). The Court held a hearing on these motions on January 25, 2011. Plaintiffs were represented by John Sheridan; Defendants were represented by Kevin Baumgardner, Michael Saunders, and Timothy Lawlor.

The above-captioned matter was removed to this Court on the basis of diversity jurisdiction. However, all individual Defendants are citizens of the State of Washington, so their presence in the case would destroy diversity. Those Defendants argue that they were fraudulently joined, which overlaps with their arguments that they should be dismissed from the matter under Fed. R. Civ. P. 12(b)(6). For the reasons set forth below, the Court finds that individual Defendants Russo and Ashley were not fraudulently joined. Therefore, the Court denies their motion to dismiss and grants Plaintiffs' motion to remand.

**ORDER GRANTING PLAINTIFFS' MOTION TO REMAND** * 1

## FACT SUMMARY

Plaintiff alleges two claims: (1) intentional interference with contract or business expectancy, against Defendant Bechtel and its agents; and (2) civil conspiracy, against all Defendants.

According to the Complaint, Plaintiff Walter Tamosaitis, Ph.D., was the Manager of Research and Technology at the Hanford Waste Treatment Plant (WTP) in Richland, Washington. Plaintiff alleges that he was transferred from his contract position at the Hanford WTP in retaliation for raising safety and technical concerns. He had been working at this position since 2003. Plaintiff alleges that Defendant Bechtel National, Inc. (BNI) falsely claimed to meet its June 30, 2010, contract requirements to earn a $6 million fee. The next day, Plaintiff allegedly presented a 50-item list at a meeting with BNI and URS managers. Plaintiff alleges that this list detailed a number of safety and technical concerns with the project, which called into question Bechtel's June 30th claim.

On July 2, 2010, Plaintiff alleges that he returned to work for a scheduled 7:00 a.m. meeting. He alleges that he was informed that he was terminated from the WTP project immediately and was directed to turn in his badge, cell phone, and blackberry. Plaintiff allegedly was instructed to leave the site and was escorted out of the building without retrieving his personal effects from his office.

Plaintiff was reassigned to a URS facility off the Hanford site. He is now working in an office in the basement and alleges that he has been given little or no meaningful work. Plaintiff is still employed by URS.

## STANDARD OF REVIEW

Under Fed. R. Civ. P. 8(a), the complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." A complaint need not contain "'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroftt v. Iqbal*, — U.S. —, 129 S.Ct. 1937, 1949 (2009) (quoting *Bell Atlantic Corp. v. Twombly*,

**ORDER GRANTING PLAINTIFFS' MOTION TO REMAND** * 2

550 U.S. 544, 555 (2007)). That is, "a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. Rather, a complaint must state "enough facts to state a claim to relief that is plausible on its face." *Id.* at 570.

Under the fraudulent joinder doctrine, "[i]f a plaintiff fails to state a cause of action against a resident defendant, and the failure is obvious according to the well-settled rules of the state, the joinder is fraudulent and 'the defendant's presence in the lawsuit is ignored for purposes of determining diversity.'" *United Computer Sys., Inc. v. AT & T Corp.*, 298 F.3d 756, 761 (9th Cir. 2002) (quoting *Morris v. Princess Cruises, Inc.*, 236 F.3d 1061, 1067 (9th Cir. 2001).

## ANALYSIS

The Court will first analyze Plaintiff's claim against individual Defendants Russo and Ashley. Because the Court concludes that the Complaint states a plausible claim against them for tortious interference, the Court declines to reach Plaintiff's claim for civil conspiracy and the other Defendants' Motions to Dismiss.

Plaintiff's first claim against Defendants Russo and Ashley is for the tort of intentional interference with contract or business expectancy. The tort has the following elements: "(1) the existence of a valid contractual relationship or business expectancy; (2) that the defendants had knowledge of that relationship; (3) an intentional interference inducing or causing a breach or termination of the relationship or expectancy; (4) that defendants interfered for an improper purpose or used improper means; and (5) resultant damage." *Deep Water Brewing, LLC v. Fairway Resources, Ltd.*, 152 Wash. App. 229, 261-62 (2009).

Defendants' first argument is that they cannot be personally liable for any tort because they were acting in the scope of employment, citing the Complaint's allegation that Defendant Bechtel is liable under the doctrine of *respondeat superior*. According to Defendants, only a master can be held liable for the torts of his servant under this doctrine. Defendants' argument fundamentally misrepresents the doctrine of *respondeat superior* / vicarious liability, and is contrary to basic

**ORDER GRANTING PLAINTIFFS' MOTION TO REMAND** \* 3

principles of tort law: "Where vicarious liability applies, it allows the plaintiff to sue either employer or employee, or both together." WASHINGTON PRACTICE VOL. 16 § 3.2 (citing *Orwick v. Fox*, 65 Wash. App. 71, 80 (1992) ("An employer and its employees are jointly and severally liable for the negligent acts of the employee in the scope of employment, and one damaged by such acts can sue both the employer and the employee or either separately.")); *see also Vanderpool v. Grange Ins. Ass'n*, 110 Wash. 2d 483, 484 (1988) (holding that because both an employer and an employee are liable where vicarious liability applies, the "release of an employer from vicarious liability does not, by operation of law, release the primarily liable employee"); *Ensley v. Pitcher*, 152 Wash. App. 891, 905 n. 11 (2009) (reaffirming the rule of law stated in *Orwick*); *Cordova v. Holwegner*, 93 Wash. App. 955, 962 (1999) (same).

Defendants' reliance on *Houser v. City of Redmond*, 91 Wash. 2d 36, 40 (1978), is misplaced. *Houser* is merely an example of the familiar proposition that a party cannot interfere with its own contract. That principle animates *Houser*'s holding that employees of an entity that is party to a contract cannot function as third-party intermeddlers with that contract unless they act outside the scope of their employment. *Id. Houser*'s holding cannot apply out of this context, and no language in *Houser* suggests that it should. The case is simply inapposite here, where the Complaint alleges that Ashley and Russo, employees and agents of Bechtel, interfered with a contract between Plaintiff and URS, to which neither Ashley, Russo, nor Bechtel were parties. Other than *Houser*, the cases Defendants cite merely articulate the doctrine of vicarious liability – that an employer is liable for the torts of its employees acting in the scope of employment, *see, e.g., Kuehn v. White*, 24 Wash. App. 274 (1979). No authorities state the proposition Defendants urge the Court to recognize: that where an employer is vicariously liable, its employees are somehow immune. Therefore, the Court rejects this argument.

Defendants' next argument is that no cause of action will lie for tortious

**ORDER GRANTING PLAINTIFFS' MOTION TO REMAND** \* 4

interference with an employment contract where such a contract is terminable at will. There is some support for this proposition: *see Woody v. Stapp*, 144 Wash. App. 1041 (2008) ("Generally, at-will employees do not have a business expectancy in continued employment."). *Woody* is an unpublished decision. As support for this general claim, it cites *Raymond v. Pacific Chem.*, 98 Wash. App. 739, 747 (1999). The page of *Raymond* to which *Woody* cites analyzes the nature of an at-will employment contract in the context of a wrongful discharge claim; the section of *Raymond* that analyzes the plaintiff's tortious interference claim is silent on the issue of the at-will contract, and affirms dismissal of the claim on another basis entirely. *Id.* at 748-49. Defendants also cite a recent opinion written by Judge Shea, which relies on *Woody* to dismiss a claim for intentional interference with an at-will employment contract. *Nat'l City Bank v. Prime Lending*, 2010 WL 2854247 (E.D. Wash. 2010).

    *Woody* appears to stand alone, contrary to the weight of authority. Two published opinions of the Washington Court of Appeals squarely hold that an at-will contract can satisfy the first element of this cause of action. *Lincor Contractors, Ltd. v. Hyskell*, 39 Wash. App. 317, 323 (1984) (holding that a third party could tortiously interfere with contract terminable at will, "so long as neither of the parties had elected to terminate it"); *Island Air, Inc. v. LaBar*, 18 Wash. App. 129, 140 (1977) ("[T]he fact that a party's terminable at will contract is ended in accordance with its terms does not defeat that party's claim for damages caused by unjustifiable interference, for the wrong for which the courts may give redress includes also the procurement of the termination of a contract which otherwise would have continued in effect.") (quotation omitted). A third published case notes the same: *Eserhut v. Heister*, 52 Wash. App. 515, 519 n. 4 (1988) ("A contract that is terminable at will is, until terminated, valid and subsisting, and the defendant

**ORDER GRANTING PLAINTIFFS' MOTION TO REMAND** * 5

may not interfere with it.").[1] As Plaintiff points out, persuasive authority also suggests the same. The RESTATEMENT OF TORTS 2d § 766, cmt. g, notes that an at will contract is "valid and subsisting, and the defendant may not improperly interfere with it." The Washington Pattern Jury Instructions, 352.01, notes: "[T]here may be a cause of action for interference with contract, even though the contract is terminable at will."

It appears that the Washington Supreme Court has yet to address this precise issue. Until that occurs, and given the substantial amount of authority supporting Plaintiff's position, the Court finds that Plaintiff's at-will employment relationship can satisfy the first element of the tort of intentional interference with contract or business expectancy. Moreover, the Court cannot find that Plaintiff fails to state a claim and "the failure is obvious according to the well-settled rules of the state." *United Computer Sys.*, 298 F.3d at 761.

Defendants also argue that Plaintiff has failed to allege that Defendants engaged in some specifically unlawful conduct, supposedly required under *Pleas v. Seattle*, 112 Wash. 2d 794, 804 (1989). Again, Defendants misrepresent the law by failing to quote the entire relevant passage from *Pleas*: "Interference can be 'wrongful' by reason of a statute or other regulation, or a recognized rule of common law, *or an established standard of trade or profession.*" *Id.* (emphasis added to clause omitted from Defendants' brief). Plaintiff has alleged (both in the Complaint and in a proposed Amended Complaint that Plaintiff would move for leave to file if this Court retains jurisdiction) that Defendants interfered with his employment relationship with URS in retaliation for his raising safety concerns,

---

[1] Defendants argue that *Eserhut I* was disavowed by the Court of Appeals in a later decision. *Eserhut v. Heister*, 62 Wash. App. 10 (1991). While that is true, the Court of Appeals did so because it found that the defendants did not act with the requisite intent. *Id.* at 16. *Eserhut II* is wholly silent on the issue of at-will employment contracts, and therefore it is incorrect to argue that the opinion supports Defendants' reading of the law.

**ORDER GRANTING PLAINTIFFS' MOTION TO REMAND** * 6

and that this retaliation violated Bechtel's obligations under contract and regulation. Those allegations (accepted as true at this point) seem more than sufficient to qualify as "wrongful" conduct by reason of both a regulation and an established standard of Plaintiff's engineering profession, as manifested in the contractual and regulatory language Plaintiff cites.

Defendants also argue that Plaintiff's claim is essentially one for retaliatory transfer, a tort that the Washington Supreme Court has expressly declined to recognize. *White v. State*, 131 Wash. 2d 1, 19-20 (1997). Also, Defendants argue that "Washington tort law does not extend to retaliation claims based on nuclear safety whistle blower complaints because federal law already provides adequate alternative means for promoting nuclear safety at Hanford and elsewhere" (Ct. Rec. 18, Defendants' Memo in Support, p. 14, citing *Korslund v. DynCorp*, 156 Wash. 2d 168 (2005)). Defendants point out that Plaintiff currently has a complaint pending before the Department of Labor based on the same basic set of facts involved in this matter.

Plaintiff recognizes the validity of these authorities, but argues that he is not asserting a claim for retaliatory transfer. The Court agrees and finds that Plaintiff's claim here is distinct from the claims advanced in *White* and *Korslund*. Plaintiff does not claim that his employer is liable for wrongfully transferring him, but rather that third parties are liable for wrongfully interfering with Plaintiff's contract with his employer. Moreover, the Court finds that Defendants read the case law too broadly. No language in *Korslund* suggests that Washington tort law as a whole is preempted by federal law relating to the nuclear industry. Rather, *Korslund*'s analysis centers around the "jeopardy" and public policy elements of a wrongful discharge claim, and declined to recognize a cause of action for wrongful retaliation on that basis alone. 156 Wash. 2d at 184. Those elements are simply not implicated by Plaintiff's tortious interference claim.

Therefore, the Court rejects each of Defendant Ashley and Russo's

**ORDER GRANTING PLAINTIFFS' MOTION TO REMAND** \* 7

arguments, and denies their Motion to Dismiss. Because they were thus not fraudulently joined, their presence in the case destroys diversity and the Court must grant Plaintiffs' Motion to Remand.

The final issue before the Court is Plaintiffs' request for costs and fees related to removal under 28 U.S.C. § 1447(c). "Absent unusual circumstances, courts may award attorney's fees under § 1447(c) only where the removing party lacked an objectively reasonable basis for seeking removal. Conversely, when an objectively reasonable basis exists, fees should be denied." *Gardner v. UICI*, 508 F.3d 559, 561 (9th Cir. 2007) (quoting *Martin v. Franklin Capital Corp.*, 546 U.S. 132, 141 (2005)). Given the unclear state of the law discussed above (particularly with respect to tortious interference with an at-will contract, and the applicability of *Korslund* to Plaintiff's claim here), the Court finds that Defendants did not lack an objectively reasonable basis for seeking removal. Therefore, the Court denies Plaintiffs' request for costs and fees.

Accordingly, **IT IS HEREBY ORDERED**:

1. Defendants Ashley and Russo's Motion to Dismiss (Ct. Rec. 17) is **DENIED.**

2. Plaintiffs' Motion to Remand (Ct. Rec. 33) is **GRANTED.**

3. The remaining motions (Ct. Recs. 13, 21, and 32) are **DENIED as moot.**

4. This matter is **remanded** in its entirety to the Superior Court for the State of Washington in and for Benton County.

///
///
///
///

**ORDER GRANTING PLAINTIFFS' MOTION TO REMAND** * 8

1  **IT IS SO ORDERED.** The District Court Executive is directed to enter this
2  Order, provide copies to counsel, and **close the file.**
3  **DATED** this 31st day of January, 2011.

*s/Robert H. Whaley*
ROBERT H. WHALEY
United States District Court

Q:\CIVIL\2010\Tamosaitis\remand.ord.wpd

**ORDER GRANTING PLAINTIFFS' MOTION TO REMAND** * 9